DECISION
{¶ 1} Chaz Minor appeals his conviction for murder with specifications. Because we conclude that his assignments of error do not have merit, we affirm the judgment of the trial court.
 {¶ 2} On April 1, 2005, Kevin Berry was shot multiple times while selling drugs in the Fay Apartments complex in Cincinnati. According to the state, Minor and his co-defendant, Larry Lewis, shot Berry because he was selling drugs in their area. Minor and Lewis were indicted for murder with firearm specifications. The case was tried before a jury.
 {¶ 3} At trial, Geronimo Johnson testified that, on the night of the shooting, he had seen Berry, Lewis, and a third, unidentified man arguing. He stated that he had then heard gunshots from two different guns. After hearing the shots, Johnson left the apartment complex without discussing what he had seen. Johnson testified that he had not intended to discuss the shooting with police officers, and that he had done so several days later only after being scared by two men while he was reporting to his probation officer. When asked by the prosecutor, Johnson stated that, since he had spoken with the police about the shootings, he had been threatened. On cross-examination, Johnson acknowledged that he had first told police that he saw four people arguing that night — Berry, Lewis, a man named Tremus, and an unidentified man. But at trial, he insisted that Tremus had not been involved in the argument that night.
 {¶ 4} Jamita Weaver testified that, on April 1, she had overheard Tremus and Lewis saying that they did not like that Berry had been selling drugs in their area. Weaver stated that, on the evening of April 1, she had approached Berry to buy some marijuana from him. According to Weaver, while she was talking to Berry, Lewis and Minor had walked by. Weaver also stated that Minor had been walking with a limp, which indicated to her that he had a long gun down his pants. According to Weaver, Lewis and Minor had approached her and Berry, and Minor had asked her why she was buying from Berry. Lewis and Minor had begun arguing with Berry about "stealing licks" from them. Weaver saw both Lewis and Minor pull out guns. Lewis's was a handgun, and Minor's was a long gun. She stated that Berry had tried to reach for his gun, but had not had time. Before she turned to run away, Weaver had seen Minor shoot Berry.
 {¶ 5} Weaver testified that, after the shooting, her brother, Dante Graves, and Minor had come to her apartment, but that she had refused to let them in. She stated that she had seen Minor give a long gun to Graves after the shooting.
 {¶ 6} Weaver did not immediately speak with police about what she had seen because she was afraid to come forward. According to Weaver, she decided to speak with the police only after she had gotten into a fight with Graves. Weaver stated that Graves had held a gun to her head. Weaver was angry and decided to speak to the police about Berry's shooting. When asked by the prosecutor, Weaver stated that she was scared for her and her children's safety.
 {¶ 7} Hasson Graham had been incarcerated with Lewis. He told Detective William Hilbert that Lewis had admitted to shooting Berry and had said that he was going to implicate Minor's brother in the shooting.
 {¶ 8} Detective Hilbert was contacted by one of Minor's family members and was told that Minor wanted to discuss Berry's shooting with the police. According to Hilbert, Minor stated that he was at his girlfriend's house with his brother, Diamond Johnson, when the shooting occurred.
 {¶ 9} In support of his alibi, Minor offered the testimony of his girlfriend, Kimyatta Halbert, who testified that, on the night of the shooting, Minor was playing video games with a friend in her apartment. Minor's mother testified that her phone bill indicated that Minor was using his phone at the time that Berry was shot.
 {¶ 10} At the conclusion of the testimony, the jury found Minor guilty of murder with specifications. After a sentencing hearing, the trial court sentenced Minor to a prison term of 15 years to life, with a consecutive three-year gun-specification term.
 {¶ 11} Minor argues his first and second assignments of error together. The first is that the trial court erred in convicting Minor because there had been prosecutorial misconduct. The second assignment of error is that the trial court erred when it permitted the admission of evidence of threats made against witnesses.
 {¶ 12} Minor argues that the introduction of evidence of the threats allegedly made against Weaver and Geronimo Johnson constituted prosecutorial misconduct. He also argues that the prosecutor improperly commented on the credibility of witnesses and denigrated defense counsel.
 {¶ 13} "To determine whether a prosecutor's remarks at trial constituted misconduct, we must determine (1) whether the remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused's substantial rights."[1] Because Minor did not object to the testimony about the threats or the comments made about the witnesses or counsel, our review is limited to a determination of whether the prosecutor's conduct amounted to plain error.[2]
 {¶ 14} Minor urges us to follow our decision in State v. Grimes. In that case, the state presented evidence that the defendant's family had attempted to prevent witnesses from testifying against Grimes by threatening and intimidating them. During his closing argument, the prosecutor urged the jury to "send a message loud and clear back to the hood that this city is not going to tolerate this violence"[3] and "that the threats are not going to work."[4] This court concluded that the prosecutor's statements improperly appealed to the jury's sympathy and urged the jury to use its verdict to send a message, regardless of Grimes's guilt. But because the trial court had given a curative instruction and because the evidence of Grimes's guilt was overwhelming, we affirmed his conviction.[5]
 {¶ 15} Unlike the prosecutor in Grimes, the prosecutor in the case before us did not improperly appeal to the jury's sympathy. Rather, evidence of the threats was used to explain why the witnesses had not come forward sooner. In Grimes, we acknowledged that such use of evidence of threats was not improper.[6] We conclude that Minor has not demonstrated that the trial court erred when it admitted evidence about the threats or that the prosecutor's comments about the threats were improper.
 {¶ 16} Minor next argues that the trial court should not have allowed the testimony about the threats because the testimony was other-act evidence. Evid.R. 404(B) prohibits the admission of evidence of "other crimes, wrongs, or acts * * * to prove the character of a person in order to show that he acted in conformity therewith." But as Minor acknowledges in his appellate brief, the witnesses did not testify that Minor or Lewis was responsible for the threats. Weaver made clear that it was her brother who had threatened her. We conclude that the evidence was not inadmissible under Evid.R. 404(B).
 {¶ 17} In addition to his arguments regarding the threat evidence, Minor asserts that other comments made by the prosecutor during his closing argument constituted prosecutorial misconduct. We disagree.
 {¶ 18} Minor contends that the prosecutor improperly commented on the credibility of Minor, his father, and Halbert. But the prosecutor's comments on the inconsistencies in their testimony were fair comments on the evidence.
 {¶ 19} Minor also argues that the prosecutor improperly denigrated defense counsel. In rebutting defense counsel's argument that had challenged some of the state's evidence, the prosecutor stated, "CSI investigator. I guess that's what Mr. Welsh is going to be now." While we agree that the statement was improper, we conclude that it did not prejudicially affect Minor's substantial rights. The first and second assignments of error are overruled.
 {¶ 20} In a related assignment of error, Minor asserts that the trial court erred when it allowed hearsay evidence of threats where the declarant was not available for confrontation and cross-examination.
 {¶ 21} Admission of a declarant's prior testimonial statements are barred by the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable to testify at trial and the defendant has had the opportunity to cross-examine the declarant[7] But in this case the alleged threats were not "made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial."[8] Accordingly, they were not testimonial statements, and Crawford is inapplicable.
 {¶ 22} In addition to challenging the threats, Minor argues that statements made by Detective Hilbert to Minor and Lewis that witnesses had implicated them in the shooting and other references to information obtained by police also violated Crawford. The statements, like the threats, were not testimonial, and not subject to Crawford. The third assignment of error is overruled.
 {¶ 23} Minor asserts in his fourth assignment of error that he was deprived of the effective assistance of counsel, because his defense counsel did not object to the evidence and argument about the threats. To prevail on his claim that his counsel was ineffective, Minor must demonstrate that his counsel's performance was deficient and that, absent his counsel's errors, the result of the trial would have been different.[9] Minor cannot meet the burden of demonstrating deficient performance because the testimony and the argument about the threats were not improper. Had an objection been made, it would have properly been overruled. The fourth assignment of error is not well taken.
 {¶ 24} We consider the next two assignments of error together. In the fifth assignment, Minor states that his conviction was based on insufficient evidence, and in the sixth, he asserts that his conviction was against the manifest weight of the evidence.
 {¶ 25} A sufficiency argument challenges whether the state presented adequate evidence on each element of the offense.[10] On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the jury clearly lost its way and created a manifest miscarriage of justice.[11]
 {¶ 26} The state's evidence was sufficient to support the conviction for murder. Any questions about the credibility of the witnesses went to the weight to be given their testimony. Having thoroughly reviewed the record, we conclude that the jury's guilty verdict was not against the manifest weight of the evidence.
 {¶ 27} Minor's final assignment of error is that the cumulative and incremental effect of errors deprived him of a fair trial. Because we conclude that there were no prejudicial errors, this assignment of error is not well taken.
 {¶ 28} The judgment of the trial court is accordingly affirmed.
Judgment affirmed.
HILDEBRANDT, P.J., and HENDON, J., concur.
[1] State v. Grimes, 1st Dist. No. C-030922, 2005-Ohio-203, at ¶ 18.
[2] Crim.R. 52(B).
[3] Grimes, supra, at ¶ 21.
[4] Id. at ¶ 25.
[5] Id. at ¶ 135.
[6] Id. at ¶ 56.
[7] Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354.
[8] Id. at 52.
[9] See State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373; Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[10] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[11] See id. at 387.